UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Dr. Leonard Chukwualuka Onyiah,

                    Plaintiff,

    vs.

St. Cloud State University; Board of
Trustees, Minnesota State Colleges
and Universities; Minnesota
Inter-Faculty Organization; Earl H.
Potter, III, President, Saint Cloud State
University; Michael Spitzer, Provost,
Saint Cloud State University; Mary
Richardson; David DeGroote; David
Robinson; Richard Sundheim; Nancy
Jessee; Byron Gayewski; Sharon Cogdill;
Steven Ludwig; and Roy H. Saigo,

                    Defendants.        Civ. No. 08-4948 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Amended Motion of the Defendants St. Cloud State

University ("the University"), the Board of Trustees for Minnesota State Colleges and Universities ("the Board")(collectively, "the University Defendants"), and the individually named Defendants, Earl H. Potter, III, Michael Spitzer ("Spitzer"), Mary Richardson ("Richardson"), David DeGroote ("DeGroote"), David Robinson ("Robinson"), Richard Sundheim ("Sundheim"), Nancy Jessee ("Jessee"), Byron Gayewski ("Gayewski"), Sharon Cogdill ("Cogdill"), Steven Ludwig ("Ludwig"), Roy H. Saigo ("Saigo")(collectively, "the Individual Defendants"), for partial Dismissal, as well as the Motion of the Defendant Minnesota Inter-Faculty Organization ("IFO") to Dismiss, and the Plaintiff's Motion for Default Judgment. See, Dockets Nos. 18, 20, 26, and 43.

A Hearing on the Motions was conducted on April 7, 2009, at which time, the Plaintiff appeared by P. Chinedu Nwaneri, Esq.; the IFO appeared by Daniel E. Warner, Esq.; and the University Defendants, and the Individual Defendants, appeared by David W. Merchant, Esq. At the time of the Hearing, we granted the parties leave to file additional briefing with respect to the Plaintiff's claim for the Intentional Infliction of Emotional Distress ("IIED"), and subsequently, we took the matter under advisement on April 20, 2009. For reasons which follow, we recommend that the Defendants' Motions be granted, and that the Plaintiff's Motion be denied.

## II. Factual and Procedural History

In this action, the Plaintiff brings claims against the Defendants for violations of the Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111-2, 125 Stat. 5 (2009) ("Fair Pay Act"), the Age Discrimination in Employment Act, Title 29 U.S.C. §§621 et seq. ("ADEA"), Title VII, Title 42 U.S.C. §§2000e et seq., and a claim for IIED, which he experienced throughout his tenure with the University. See, Amended Complaint, Docket No. 71, at ¶¶24-55, 64-66.[1] In addition, the Plaintiff brings a claim against the IFO for a claimed breach of its duty of fair representation, pursuant to the Public Employee Labor Relations Act, Minnesota Statutes Sections 179A.01 et seq. Id. at ¶¶55-63 ("PELRA"). For their part, the Defendants assert that the Plaintiff's claims, except for his pay discrimination claim, should be dismissed. See, University Defendants' Motion to Dismiss, Docket No. 18; IFO's Motion to Dismiss, Docket No. 20; University Defendant's Amended Motion to Dismiss, Docket No. 43. We briefly summarize the operative facts.

---

[1]For reasons we later detail, we conclude that the Plaintiff never waived his right to amend his Complaint, under Rule 15(a)(1), Federal Rules of Civil Procedure, and therefore, we rely on the factual allegations in his Amended Complaint which, for the purposes of the Defendants' dispositive Motions, we construe in a light most favorable to the Plaintiff. See, Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913,, 915 n. 2 (8th Cir. 2000), citing Davenport v. Farmers Ins. Group, 378 F.3d 839, 841 (8th Cir. 2004).

The Plaintiff is a fifty-nine (59) year old male of African descent, who is currently employed by the University as a statistics professor. See, Amended Complaint, supra at ¶14. In 1998, the University hired the Plaintiff to work as an Assistant Professor of Statistics. Id. The Plaintiff alleges that, at the time of his hire, his rank and salary were below the level required by his academic qualifications. Id. In July of 2000, the University terminated the Plaintiff's employment. Id. at ¶15. After his dismissal, the University advertised for the Plaintiff's former position, but did not interview him. Id. at ¶47. Instead, the University hired Dr. Byron Gajewski ("Gajewski"),[2] who is both white, and younger, than the Plaintiff. Id. at ¶¶15, 47. The Plaintiff was unemployed throughout the 2000 to 2001 academic year, but was rehired in August of 2001. Id. at ¶¶16-17. Since his rehiring, the Plaintiff has remained employed by the University. Id. at ¶17.

In February of 2002, the Plaintiff became a tenured-track Associate Professor, and thereafter, in August of 2005, he was promoted to a tenured Associate Professor. Id. at ¶¶18-19. In August of 2006, the Plaintiff became a tenured Professor. Id. at ¶20. Despite the Plaintiff's promotions, he contends that he has been significantly

---

[2]We employ the Plaintiff's spelling, but presume, without knowing, that Gayewski and Gajewski are the same person.

underpaid, when compared to his peers, since 1998.  Id. at ¶21.  The Plaintiff notes that independent consultants, who were hired by the University, conducted equity studies, which discovered that the Plaintiff's compensation was below average, when compared to individuals with similar experience, and academic qualifications.  Id. The Plaintiff alleges that, despite the results of the equity studies, the University failed to resolve the pay inequities.  Id.  In addition, the Plaintiff asserts that the University paid non-black professors, who had similar qualifications to those of the Plaintiff, at a higher salary.  Id.  Further, the Plaintiff maintains that younger professors, who did not possess the Plaintiff's qualifications, also received a higher salary.  Id. at ¶22.

The Plaintiff also alleges that he has been subjected "to an atmosphere of harassment and hostility" since his hiring in 1998.  Id. at ¶50.  According to the Amended Complaint, the Individual Defendants encouraged students to harass the Plaintiff during his class, and file false accusations against him with the University. Id.  On December 9, 1998, a faculty member is alleged to have marched into the Plaintiff's class, and directed him to "go back and wipe the board for me," as the Plaintiff was preparing to leave the classroom.  Id. at ¶51.  The Plaintiff maintains that the hostility and harassment escalated when his fellow faculty members were asked to create "a departmental strategic plan to promote diversity in the department * * *."

Id. at ¶52.  However, the faculty members "unanimously declared that they did not know what diversity meant."  Id.

During that same academic year, Robinson became the Chair of the Statistics and Computer Networking Department.  Id. at ¶53.  The Plaintiff contends that Robinson, Sundheim, Richardson, and others, conspired to fire the Plaintiff at the end of the 1999 to 2000 academic year.  Id.  The Plaintiff alleges that, as part of that plan, Richardson enlisted a student to shout, and to insult the Plaintiff, during his class.  Id. at ¶54.  The Plaintiff reported the incident to Robinson, but no disciplinary action was taken against Richardson.  Id.  In addition, during the 2004 to 2005 academic year, Robinson allegedly "devised and applied a discriminatory grid solely * * * to make [the Plaintiff] look bad and recommend[ed] that [the] Plaintiff be denied tenure and promotion."  Id. at ¶55.

With respect to the IFO, the Plaintiff contends that the IFO breached its duty of fair representation, under the collective bargaining agreement ("the Master Agreement") between the IFO and the University, when it failed to represent the Plaintiff in his discrimination complaints against the University.  Id. at ¶¶56-58.  In addition, the Plaintiff maintains that the IFO's breach enabled the University to

continue its pattern of discrimination, and as a result, the Plaintiff suffered extreme emotional distress.  Id. at ¶62.

On January 3, 2007, the Plaintiff filed a discrimination charge with the Minnesota Department of Human Rights ("MDHR"), in which he alleged that he had suffered employment discrimination, and harassment, because of his race, national origin, and age.  See, Complaint, Docket No. 1, Exhibit 56.  At around that same time, the Plaintiff also filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Id., Exhibit 57.  On May 23, 2008, the EEOC issued the Plaintiff a right to sue letter.  Id.

On August 11, 2008, the Plaintiff commenced this action by the filing of his original Complaint.  See, Docket No. 1.  On March 27, 2009, after the Defendants had filed their Motions to Dismiss, the Plaintiff -- now represented by legal counsel -- filed a Motion to Amend his Complaint pursuant to Rule 15(a)(2), Federal Rules of Civil Procedure.  See, Docket No. 58.  However, on April 2, 2009, the Plaintiff withdrew his Motion to Amend so as to "preserve [the] Plaintiff's right(s) under" Rule 15(a)(1).  See, Docket No. 67.  At the Hearing, the University Defendants, and the Individual Defendants, advised that they would stipulate to the Amended Complaint.

However, the IFO would not so stipulate because, it asserted, the Plaintiff had waived his right to amend the Complaint under Rule 15(a)(1), when he filed his Motion to Amend, in which he requested that he be permitted to amend his Complaint pursuant to Rule 15(a)(2).  See, <u>IFO's Memorandum in Opposition -- Amended Complaint</u>, <u>Docket No 65</u>, at 2.  In response, the Plaintiff maintains that he did not waive his right to amend the Complaint under Rule 15(a)(1).  Since the Plaintiff's Amended Complaint removes many of the issues, arguments, and Defendants, from his original pleading, we must first determine whether the Plaintiff waived his right to amend, under Rule 15(a)(1), before analyzing the Defendants' Motions to Dismiss.

III.  <u>Discussion</u>

A.    <u>The Plaintiff's Amended Complaint</u>.

1.    <u>Standard of Review</u>.  Rule 15(a)(1), Federal Rules of Civil Procedure, states that "[a] party may amend its pleading once as a matter of course * * * before being served with a responsive pleading * * * ."  However a Motion to Dismiss is not considered a responsive pleading under Rule 15.  See, <u>State of Minnesota by Humphrey v. Standard Oil Co. (Indiana)</u>, 568 F. Supp. 556, 559 (D. Minn. 1983); <u>Foster v. Deluca</u>, 545 F.3d 582, 584 (7th Cir. 2008)("For purposes of Rule 15(a), a motion to dismiss does not constitute a responsive pleading[.]"), citing

- 8 -

Camp v. Gregory, 67 F.3d 1286, 1289 (7th Cir. 1995), cert. denied, 517 U.S. 1244 (1996); Williams v. Board of Regents of University System of Georgia, 477 F.3d 1282, 1291 (11th Cir. 2007)("For purposes of * * * Rule [15(a)], a motion to dismiss is not a responsive pleading."), citing Chilivis v. Securities and Exchange Commission, 673 F.2d 1205, 1209 (11th Cir. 1982).  Nonetheless, "[t]here is no absolute right to amend." Becker v. University of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999), citing Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 224 (8th Cir. 1994);  see also, Foster v. Deluca, supra at 584.

   2. Legal Analysis.  As noted, the IFO contends that the Plaintiff waived his right to amend the Complaint under Rule 15(a)(1), because his Motion to Amend cited only to Rule 15(a)(2).  See, IFO's Memorandum in Opposition -- Amended Complaint, supra at 2.  The Plaintiff asserts that he did not waive his right to amend under Rule 15(a)(1), because he withdrew his Motion so as to preserve his rights under Rule 15(a)(1) and, shortly thereafter, he filed his Amended Complaint.  Notably, both parties have relied upon our Court of Appeals' decision in Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952 (8th Cir. 2002), to support their respective arguments.  Accordingly, we turn to consider whether Pure Country prohibits the Plaintiff from amending his Complaint under Rule 15(a)(1).

- 9 -

In <u>Pure Country, Inc.</u>, the plaintiff maintained that, although it had filed and argued before the lower Court, that it was entitled to amend its Complaint pursuant to Rule 15(a)(2), Federal Rules of Civil Procedure, the lower Court erred when it did not allow the plaintiff to amend its Complaint under Rule 15(a)(1). <u>Id.</u> at 955. The defendant contended that, since the plaintiff had filed "a motion to amend the complaint, rather than simply filing the amended complaint, [the plaintiff] invoked the district court's discretionary authority to deny [the plaintiff] permission to amend the complaint." <u>Id.</u> at 956.

The Court rejected the defendant's argument, "that the mere act of filing a motion to amend or seeking leave amend negates the otherwise applicable 'as a matter of course' language of Rule15(a)." <u>Id.</u> Nonetheless, the Court distinguished the plaintiff's Motion to Amend from a "matter of course" circumstance, as follows:

> In the present case, however, [the plaintiff] did not merely file a motion for leave to amend the complaint and either implicitly or explicitly rely on the 'as a matter of course' language of Rule 15(a). Rather, in its motion to amend, [the plaintiff] expressly quoted and relied upon a different part of the rule. As stated, above, [the plaintiff] argued to the district court in its motion to amend: "Rule 15(a) Fed.R.Civ.P., provides that a party may amend its pleading before a responsive pleading is filed 'only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires." * * * In other

words, [the plaintiff] specifically asked the district court to apply a legal standard that is completely different from the one it now urges us to apply on appeal. Under the particular circumstances of the present case, we review the district court's failure to apply the correct legal standard only for plain error because [the plaintiff] clearly waived its right to rely on that standard.

Id.

Here, the IFO contends that the Plaintiff waived his right to amend "as a matter of course" because he originally relied upon Rule 15(a)(2) in his Motion to Amend. We disagree.

Unlike the circumstances in Pure Country, the Plaintiff did not commit his Motion to Amend to our discretion, but instead, he withdrew that Motion so as to preserve his right to Amend, "as a matter of course," under Rule 15(a)(1). Moreover, in Pure Country, the Court rejected the IFO's argument, that the act of filing a Motion to Amend, pursuant to Rule 15(a)(2), waives the Plaintiff's right to amend under Rule 15(a)(1). Id. ("To begin, we disagree with [the defendant's] suggestion that the mere act of filing a motion to amend or seeking leave amend negates the otherwise applicable 'as a matter of course' language of Rule15(a)."). Accordingly, we find that the Plaintiff did not waive his right to amend pursuant to Rule 15(a)(1), and therefore, the Plaintiff properly amended his Complaint "as a matter of course."

Proceeding to the larger question, as a general proposition, if a defendant files a Motion to Dismiss, and the plaintiff later files an Amended Complaint, the amended pleading renders the defendant's Motion to Dismiss moot. See, Pure Country, Inc. v. Sigma Chi Fraternity, supra at 956 ("If anything, [the plaintiff's] motion to amend the complaint rendered moot [the Defendant's] motion to dismiss the original complaint."), citing Standard Chlorine of Delaware, Inc. v. Sinibaldi, 821 F. Supp. 232, 239-40 (D. Del. 1992)(finding that the plaintiff's filing of an Amended Complaint rendered the defendant's Motion to Dismiss moot); see also, Ideal Instruments, Inc. v. Rivard Instruments, Inc., 434 F. Supp.2d 640, 646 (N.D. Iowa 2006). However, at the end of the Hearing, the parties mutually requested that, if we allowed the Plaintiff to amend his Complaint, we should, nonetheless, determine whether the Amended Complaint could properly withstand the Defendants' Motions to Dismiss, and we acceded to that request. Accordingly, we turn to consider the Defendants' Motions to Dismiss.

B.     Defendants' Motion to Dismiss.

In his Amended Complaint, the Plaintiff raises five (5) claims:  1) that the Defendants have committed pay discrimination in violation of the Fair Pay Act, see, Pub.L. No. 111-2, 124 Stat. 5 (2009);[3] 2) that the University violated the ADEA when it refused to hire the Plaintiff, but instead, hired a younger, white professor to replace the Plaintiff; 3) that the conduct of the University Defendants, and the Individual Defendants, subjected the Plaintiff to a hostile work environment; 4) that the IFO breached its duty of fair representation; and 5) that all of the Defendants have subjected the Plaintiff to conduct that warrants the IIED claim.  See, Amended Complaint, supra at ¶¶24-66.[4]

---

[3]The University Defendants concede that their argument, that the Plaintiff's pay discrimination claims are time-barred, has recently been mooted by the passage of the Fair Pay Act.  See, University Defendants' Reply Memorandum, Docket No. 41, at 1-2.  However, the Individual Defendants still maintain that the Plaintiff's pay discrimination claims, as asserted against them, should be dismissed, because they are not the Plaintiff's employer under either the ADEA, or Title VII.  Id. at 2.

[4]The Plaintiff's Amended Complaint removed many of the claims, and parties, from the original Complaint, and therefore, from this action.  See, In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000)("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect.") , citing Washer v. Bullitt County, 110 U.S. 558, 562 (1884).  Specifically, the Plaintiff struck the following claims against the Defendants: 1) a violation of Title 42 U.S.C. §1983 for pay discrimination, and for the denial of (continued...)

For their part, the University Defendants, and the Individual Defendants, contend that the Plaintiff's claims should be dismissed because: 1) the Individual Defendants are not the Plaintiff's employer under the ADEA, and Title VII; 2) the Plaintiff's remaining Title VII and ADEA claims are time-barred; and 3) the Plaintiff's claim for IIED should be dismissed on the basis of Eleventh Amendment immunity, and for failure to state an actionable claim. See, <u>University Defendants' Memorandum in Support</u>, supra at 15-16, 18, 21-22, 24-27; <u>University Defendants' Reply Memorandum</u>, supra at 8-10, 12.

---

[4](...continued)
tenure and promotions; 2) a violation of Title 42 U.S.C. §1985 predicated on the Defendants' denial of the Plaintiff's Due Process rights; 3) a violation of the Minnesota Human Rights Act for pay discrimination, and for the denial of promotion, tenure, and an appointment as the Chair of the Department of Statistics; 4) a violation of Title VII for the denial of promotion, tenure, and an appointment as the Chair of the Department of Statistics; and 5) a violation of the ADEA for the denial of promotion, tenure, and an appointment as the Chair of the Department of Statistics. See, <u>Complaint</u>, supra at ¶¶67-104. Accordingly, we do not address the parties' arguments with respect to those claims.

In addition, the Plaintiff has removed many of Defendants, who were named in his original Complaint, as the Amended Complaint no longer asserts claims against Richardson, Jessee, Gayewski, Cogdill, and Saigo, and therefore, the Clerk of Court should be directed to dismiss those persons from this action in both their individual and official capacities.

In turn, the IFO contends that the Plaintiff's claims should be dismissed because: 1) the Plaintiff failed to file a timely discrimination charge against the IFO; 2) the IFO was not involved in the alleged adverse employment actions; 3) the Plaintiff's duty of fair representation claims are time-barred; and 4) the IFO's alleged conduct does not meet the threshold level required for a claim of IIED. See, <u>IFO's Memorandum in Support</u>, supra at 15-18, 20-25. We turn to the parties' arguments.

       1.    <u>Standard of Review</u>. "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." <u>Riley v. St. Louis County</u>, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing <u>Double D Spotting Serv., Inc. v. Supervalu, Inc.</u>, 136 F.3d 554, 556 (8th Cir. 1998); see also, <u>Maki v. Allete, Inc.</u>, 383 F.3d 740, 742 (8th Cir. 2004). In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party. See, <u>Maki v. Allete, Inc.</u>, supra at 742. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set

of facts in support of a claim entitling him to relief."[5] <u>Young v. City of St. Charles</u>, 244 F.3d 623, 627 (8th Cir. 2001), citing <u>Breedlove v. Earthgrains Baking</u>, 140 F.3d 797, 799 (8th Cir. 1998), cert. denied, 525 U.S. 921 (1998); see also, <u>Maki v. Allete</u>, supra at 742; <u>Helleloid v. Independent School Dist. No. 361</u>, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." <u>Young v. City of St. Charles</u>, supra at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." <u>Id.</u>, citing <u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, 133 F.3d 649, 651 (8th Cir. 1998); see also, <u>Bell Atlantic Corp. v.</u>

---

[5]We recognize that the "no set of facts" standard, in reviewing Motions to Dismiss, was abrogated by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 562-63 (2007)(The standard in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), of "no set of facts" "has earned its retirement."). Nevertheless, the abrogation did not change the Court's "accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> at 546; see also, <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009)("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"), quoting <u>Bell Atlantic Corp. v. Twombly</u>, supra at 570. Here, we apply the Supreme Court's "accepted pleading standard."

Twombly, 550 U.S. 544, 555 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); see also, Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009)("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"), quoting Bell Atlantic Corp. v. Twombly, supra at 556-57.

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069

(8th Cir. 2004); <u>Stahl v. United States Dep't of Agriculture</u>, 327 F.3d 697, 700 (8th Cir. 2003).

Materials necessarily embraced by the pleadings include "documents whose contents are alleged in the complaint, and whose authenticity nobody questions, but which are not physically attached to the pleading." <u>Fraenkel v. Messerli & Kramer, P.A.</u>, 2004 WL 1765309 at *2 (D. Minn., July 29, 2004), quoting <u>Kushner v. Beverly Enters.</u>, 317 F.3d 820, 831 (8th Cir. 2003), see also, <u>Jenisio v. Ozark Airlines, Inc., Ret. Plans</u>, 187 F.3d 970, 972 n.3 (8th Cir. 1999)("A district court may consider documents on a motion to dismiss where * * * the plaintiff's claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents."). Here, since our recommendation rests entirely upon the pleadings, materials within the public record, and materials that are necessarily embraced by the pleadings, we analyze the Defendants' Motion under the framework of Rule 12(b)(6), and not under Rule 56.

2.  <u>Legal Analysis</u>.  We address the Plaintiff's claims separately, as they involve different legal considerations.

a.  <u>The Fair Pay Act</u>.  As noted, the University Defendants have withdrawn their Motion with respect to the Plaintiff's pay discrimination claim, which

is based upon Title VII, and the ADEA. However, the Plaintiff has leveled similar

accusations against the Individual Defendants, and the IFO.[6]  See, <u>Amended</u>

<u>Complaint</u>, supra at ¶39 ("Defendants, jointly and severally, have discriminated and

conspired to discriminate against [the Plaintiff] in violation of the Lilly Ledbetter Fair

Pay Act of 2009 * * *.").

        1)     <u>Standard of Review</u>.  In <u>Ledbetter v. Goodyear Tire</u>

<u>& Rubber Co., Inc.</u>, 550 U.S. 618, 618-19 (2007), the plaintiff argued that a new

EEOC charging period was triggered with each discriminatory paycheck that was

issued after her employer denied her a promotion, allegedly on the basis of her gender.

In rejecting the plaintiff's argument, the Supreme Court found as follows:

> The EEOC charging period is triggered when a discrete
> unlawful practice takes place. A new violation does not
> occur, and a new charging period does not commence, upon

the occurrence of subsequent nondiscriminatory acts that entail adverse effects
resulting from the past discrimination. But of course, if an employer engages in a

---

[6]Although the Plaintiff's pay discrimination claim does not identify either Title VII or the ADEA, his claim is permeated with allegations that the Plaintiff's pay was lower than younger and non-black individuals.  See, <u>Amended Complaint</u>, supra at ¶¶24-40.  Moreover, Congress passed the Fair Pay Act, at least in part, to amend the language of Title VII, and the ADEA, so as to ensure that victims of pay discrimination would be able to litigate the effects of an assertedly discriminatory pay practice. See,  <u>Pub.L. No. 111-2 ¶2, 125 Stat. 5 (2009)</u>.  Accordingly, we analyze the Plaintiff's pay discrimination claims under Title VII, and the ADEA.

series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed.

Id. at 628, citing National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

In response to Ledbetter, Congress passed the Fair Pay Act in order to overturn and

reverse its effects.  See, Pub.L. No. 111-2, 125 Stat. 5 (2009); see also, Johnson v.

District of Columbia, 2009 WL 2029872 at *1 (D. D.C., July 14, 2009)("Through the

Fair Pay Act, Congress intended to reverse the effect of the Supreme Court's decision

in Ledbetter * * *."); Mays v. Central States Southeast and Southwest Areas Pension

Fund, 2009 WL 2163177 at *2 (D. Kan., July 1, 2009)(recognizing that the Fair Pay

Act overturned the Ledbetter decision).

For our purposes, the Fair Pay Act changed the definition of unlawful

employment practices, as it relates to pay discrimination claims under Title VII and

the ADEA.[7]  Specifically, Title VII states as follows:

> For purposes of this section, an unlawful employment
> practice occurs, with respect to discrimination in
> compensation in violation of this title, when a
> discriminatory compensation decision or other practice is
> adopted, when an individual becomes subject to a
> discriminatory compensation decision or other practice, or
> when an individual is affected by application of a

---

[7]The Fair Pay Act also amended the Americans with Disability Act, see, Title 42 U.S.C. §12111, et seq., and the Rehabilitation Act of 1973, see, Title 29 U.S.C. §791, et seq.

> discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Title 42 U.S.C. §2000e-5(3)(A).

Similar changes were made to the ADEA, so as to provide as follows:

> For purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this chapter, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Title 29 U.S.C. §626(d)(3).

We apply those definitions here.

2)    Legal Analysis.  The Individual Defendants argue that the Plaintiff's pay discrimination claims should be dismissed because they are not the Plaintiff's employer under either Title VII, or the ADEA.  We agree.

Title VII, and the ADEA, are applicable to employers, and not to individuals. See, Van Horn v. Best Buy Stores, L.P., 526 F.3d 1144, 1147 (8th Cir. 2008)(noting that Title VII provides for actions against employers not supervisors); Powell v. Yellow Book USA, Inc., 445 F.3d 1074, 1079 (8th Cir. 2006)("Title VII addresses the

conduct of employers only and does not impose liability on co-workers[.]"), citing Smith v. St. Bernards Reg'l Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994); Breen v. Norwest Bank Minnesota, N.A., 865 F. Supp. 574, 578 (D. Minn. 1994)("Title VII does not impose individual liability on employees.")[citation omitted]; Smith v. Bankers Life and Cas. Co., 519 F. Supp.2d 964, 967 (S.D. Iowa 2007)(finding that the ADEA did not provide for individual liability); Payne v. Peter Kiewit Sons', Inc., 2007 WL 1319535 at *3 n. 4 (D. Neb., April 3, 2007)("Nevertheless, under the ADEA an individual is not an 'employer' and cannot be held individually liable."), citing Medina v. Ramsey Steel Co., 238 F.3d 674, 686 (5th Cir. 2001); White v. Edward D. Jones & Co., 1994 WL 408382 at *2 (E.D. Mo., March 30, 1994)(noting that neither Title VII, nor the ADEA, apply to individual employees). Moreover, the Plaintiff has acknowledged that he was "[a]t all material times * * * employed by the University," Amended Complaint, supra at ¶1, and he has not alleged that any Individual Defendant was his employer. Therefore, the Plaintiff's pay discrimination claims against the Individual Defendants should be dismissed.

We also find that the Plaintiff's pay discrimination claims against the IFO are equally unavailing. The Plaintiff alleges that a Patrice Arsenault ("Arsenault"), who is the Equity Officer of the IFO, tried to assist the Plaintiff in resolving his salary

dispute with the University, but that those negotiations failed. See, Plaintiff's Memorandum in Support, supra at 17. The Plaintiff argues that the failure to resolve his salary dispute demonstrates that the IFO, and the University, conspired to discriminate against him. Id. However, the Plaintiff fails to support that contention with any factual showing, or with any rationale that would make the contention plausible.

Furthermore, the Fair Pay Act allows plaintiffs to assert a claim against the employer, or the decision maker who rendered the discriminatory compensation decision, or practice. See, Title 42 U.S.C. §2000e-5(3)(A); Title 29 U.S.C. §626(d) (3). However, the IFO attests that it has never "directly determined the individual salary for [the Plaintiff] in any position he has held at [the University]." See, Affidavit of Roderick Henry ("Henry Aff."), Docket No. 28, at ¶8. The IFO further avers that it "has advocated with higher management for a higher salary for [the Plaintiff], but it has never been responsible for setting his individual salary." Id. The Plaintiff offers nothing to contradict, nor to undermine, those attestations. Indeed, the Plaintiff's conclusory allegations against the IFO are wholly insufficient to establish his pay discrimination claim against it. See, Young v. City of St. Charles, supra at 627; Springdale Educ. Ass'n v. Springdale Sch. Dist., supra at 651; see also, Bell

Atlantic Corp. v. Twombly, supra at 555. Accordingly, we recommend that the Plaintiff's pay discrimination claims against the Individual Defendants, and the IFO, be dismissed.[8]

   b. <u>The Plaintiff's ADEA Claim</u>. Since the University Defendants have withdrawn their arguments concerning the Plaintiff's pay discrimination claims, we focus only upon the Plaintiff's allegation that the University discriminated against him, on the basis of age, when it hired a younger professor to replace him in 2000.[9] See, <u>Amended Complaint</u>, supra at ¶¶41-48. The University Defendants contend that the Plaintiff's discriminatory hiring claim is time-barred. See, <u>University Defendants' Memorandum in Support</u>, supra at 21. Given the Record presented, we conclude that the Plaintiff's ADEA claim is, in fact, time-barred.

---

[8]While we have referred to averments offered by the IFO in Affidavits, our recommendation is predicated on the absence of an allegation that the IFO was the Plaintiff's employer, and the implausibility of the contention that mere membership in a union creates an employer/employee relationship. Accordingly our recommendation is for dismissal, and not for Summary Judgment.

[9]Although the Amended Complaint contends that all of the Defendants were involved in the alleged discriminatory pay practices, the Plaintiff identifies the University with respect to the assertedly discriminatory hiring decision that was made in 2000. See, <u>Amended Complaint</u>, supra at ¶¶41-48. Therefore, we address the Plaintiff's claims only as against the University.

"Exhaustion of administrative remedies is a condition precedent to the filing of an action under the ADEA in federal court." <u>Parisi v. Boeing Co.</u>, 400 F.3d 583, 585 (8th Cir. 2005), citing <u>Dorsey v. Pinnacle Automation Co.</u>, 278 F.3d 830, 835 (8th Cir. 2002); see also, <u>Phillip v ANR Freight System, Inc.</u>, 61 F.3d 669, 676 (8th Cir. 1995)("It is clear that a prerequisite to filing suit under the ADEA is the filing of charges with the EEOC."); <u>Sallis v. University of Minnesota</u>, 322 F. Supp.2d 999, 1004 n. 1 (D. Minn. 2004)("Moreover, because Sallis has not exhausted administrative remedies in connection with age discrimination, his ADEA claim is not properly before the Court."), aff'd, 408 F.3d 470 (8th Cir. 2005). "Because Minnesota is a deferral state, a complainant must file a charge within 300 days from the date of the alleged unlawful employment action." <u>D.W. v. Radisson Plaza Hotel Rochester</u>, 958 F.Supp. 1368, 1373 (D. Minn. 1997), citing <u>Title 42 U.S.C. §2000e-5(e)(1)</u>; see also, <u>Title 29 U.S.C. §626(d)(1)(B)</u>.

In this case, it is undisputed that the Plaintiff filed his charge with the EEOC, and with the MDHR, on January 3, 2007, which was nearly seven (7) years after the alleged act of discriminatory hiring occurred. See, <u>Docket No. 5</u>, supra, Exhibits 56-57. Since the Plaintiff failed to file a timely charge with respect to the allegedly discriminatory hire, his claims are time-barred.

In addition, the Plaintiff cannot preserve his claim by asserting that the failure to hire was merely part and parcel of the University Defendants' continuing violation of his rights under the ADEA. A plaintiff may seek "redress for unlawful discriminatory acts which occurred prior to the statute of limitations period if they are related to violative acts which occurred within the statutory period." Smith v. Ashland, Inc., 179 F. Supp.2d 1065, 1069 (D. Minn. 2000), aff'd, 250 F.3d 1167 (8th Cir. 2001). However, "'[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire' are 'not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" Tademe v. Saint Cloud State University, 328 F.3d 982, 988 (8th Cir. 2003), quoting Nat'l R.R. Passenger Corp. v. Morgan, supra at 114; see also, High v. University of Minnesota, 236 F.3d 909, 909 (8th Cir. 2000)("This court has never applied the continuing violations doctrine to a discrete act, such as failure to promote, and we decline to do so now."). Here, the University's refusal to hire, or to interview the Plaintiff, is a discrete act and, as a result, is not actionable under the continuing violations doctrine.

Nor may the Plaintiff apply the provisions of the Fair Pay Act to preserve his age discrimination claim. Since the Fair Pay Act applies only to pay discrimination claims, the Plaintiff must link the University's failure to hire him, in 2000, to his pay

discrimination claims. See e.g., <u>Rowland v. Certainteed Corporation</u>, 2009 WL 1444413 at *6 (E.D. Pa., May 21, 2009)("[T]he Ledbetter Act does not help Plaintiff because she pressed no discriminatory compensation claim with respect to her failure to promote."), <u>Leach v. Baylor College of Medicine</u>, 2009 WL 385450 at *17 (S.D. Tex., February 17, 2009)("The Fair Pay Act of 2009 only affects the <u>Ledbetter</u> decision with respect to the timeliness of discriminatory compensation claims."); <u>Vuong v. New York Life Ins. Co.</u>, 2009 WL 306391 at *7-9 (S.D.N.Y., February 6, 2009)(rejecting the application of the Fair Pay Act to failure to promote claims). Here, however, the Plaintiff has failed to provide the essential nexus between the alleged refusal to hire, and the Plaintiff's pay discrimination claims, and therefore, we recommend that the Plaintiff's age discrimination claims be dismissed.

        c.    <u>Hostile Work Environment</u>. The Plaintiff contends that the harassment and abuse of the Defendants, with the exception of the IFO, created a hostile work environment, in violation of Title VII. See, <u>Amended Complaint</u>, supra ¶¶49-55. According to the Amended Complaint, the University Defendants, and the Individual Defendants, "encouraged students to abuse [the Plaintiff] in class and advised them to report [the Plaintiff] to the Dean by making unfounded allegations and baseless accusations." <u>Amended Complaint</u>, supra at ¶50. The Plaintiff also

contends that other faculty members demeaned him in front of his students. Id. at ¶51. In addition, the Plaintiff maintains that other faculty members, and in particular Robinson, ignored his harassment complaints, and conspired to deny him promotion and tenure. Id. at ¶¶53-55.

For their part, the University Defendants, and the Individual Defendants, urge that, even if the Plaintiff's allegations are true, his claims should be dismissed because Title VII only applies to employers, and additionally, that the Plaintiff's claim is time-barred. See, University Defendants' Memorandum in Support, supra at 15-16; University Defendants' Reply Memorandum, supra at 9-11. Given the Record presented, we agree with the University Defendants, and the Individual Defendants.

      1)    Standard of Review. For a plaintiff to demonstrate harassment based upon his race or national origin, he must prove that:

> (1) he is a member of a protected class; (2) unwelcome harassment occurred; (3) there is a causal nexus between the harassment and his protected-group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) [the defendants] knew or should have known of the harassment and failed to take prompt and effective remedial action.

Hannoon v. Fawn Engineering Corp., 324 F.3d 1041, 1048 (8th Cir. 2003), quoting Robinson v. Valmount Indus., 238 F.3d 1045, 1047 (8th Cir. 2001).

To establish a hostile work environment, the facts must show "the harassment to have been 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment' as viewed objectively by a reasonable person." O'Brien v. Department of Agriculture, 532 F.3d 805, 809 (8th Cir. 2008), quoting Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 618 (8th Cir. 2007), quoting, in turn, Tademe v. Saint Could State Univ., supra at 991; see also, Arraleh v. County of Ramsey, 461 F.3d 967, 979 (8th Cir. 2006)("To demonstrate that harassment altered the terms and conditions of one's employment, the conduct alleged must be severe and pervasive, both objectively and subjectively."), cert. denied, 550 U.S. 904 (2007), citing Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998).

"Hostile work environment claims are assessed based on the totality of the circumstances[.]" Id., citing Vajdl v. Mesabi Academy of KidsPeace, Inc., 484 F.3d 546, 551 (8th Cir. 2007). The totality of circumstances include "the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Brannum v. Missouri Dept. of Corrections, 518 F.3d 542, 549 (8th Cir. 2008), quoting Harris v. Forklift Systems, Inc., 510 U.S. 17,

23 (1993); see also, <u>Nitsche v. CEO of Osage Valley Elec. Co-op.</u>, 446 F.3d 841, 846 (8th Cir. 2006).

"'To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant.'" <u>Carpenter v. Con-Way Cent. Express, Inc.</u>, supra at 618, quoting <u>Nitsche v. CEO of Osage Valley Elec. Co-op.</u>, supra at 846; see also, <u>Arraleh v. County of Ramsey</u>, supra at 979 ("'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'"), quoting <u>Al-Zubaidy v. TEK Industries, Inc.</u>, 406 F.3d 1030, 1039 (8th Cir. 2005)[Internal citations and quotations marks omitted].

    2) <u>Legal Analysis</u>. The Plaintiff argues that the Individual Defendants' repeated harassment and abuse, based upon the Plaintiff's race and national origin, subjected him to a hostile work environment. However, regardless of the Individual Defendants' conduct, we conclude that the Plaintiff's hostile work environment claim is without merit. As we have previously explained, Title VII is applicable to employers, and not to individuals. See, <u>Van Horn v. Best Buy Stores, L.P.</u>, supra at 1147; <u>Powell v. Yellow Book USA, Inc.</u>, supra at 1079; <u>Breen v. Norwest Bank Minnesota, N.A.</u>, supra at 578; <u>White v. Edward D. Jones &</u>

Co., supra at *2. The Plaintiff does not contend that the Individual Defendants are his employer, see, Amended Complaint, supra ¶1, and therefore, his hostile work environment claim is only actionable against the University.

With respect to the Plaintiff's hostile work environment claim against the University, we find that the Plaintiff's claim is time-barred. "[A] Title VII plaintiff generally does not exhaust her administrative remedies unless she complains of the discriminatory behavior to the EEOC before filing a lawsuit." Fair v. Norris, 480 F.3d 865, 867 n. 2 (8th Cir. 2007), citing Stuart v. General Motors Corp., 217 F.3d 621, 630-31 (8th Cir. 2000). Therefore, the Plaintiff had three hundred (300) days in which to file a charge with the EEOC, after the alleged discriminatory actions occurred. See, Title 42 U.S.C. §2000e-5(e)(1); D.W. v. Radisson Plaza Hotel Rochester, supra at 1373.

The Plaintiff did not file his EEOC charge until January 7, 2007. See, Docket No. 5, supra, Exhibit 56. As a result, any discriminatory actions, which occurred prior to March 6, 2006, are time-barred. In his Amended Complaint, the last allegedly discriminatory event occurred during the 2004 to 2005 academic year. See, Amended Complaint, supra at ¶55. Accordingly, since the last alleged discriminatory action

took place almost a full year before the deadline of March 6, 2006, the Plaintiff's hostile work environment claim is time-barred.

Nor may the Plaintiff attempt to preserve his hostile work environment claim through the continuing violations doctrine. The continuing violation theory would only be available if the Plaintiff had filed a timely charge, that was predicated upon an act that was part and parcel of the hostile work environment. See, Wilson v. Brinker Intern., Inc., 382 F.3d 765, 771-72 (8th Cir. 2004)("It does not matter * * * that some of the component acts of the hostile work environment fall outside the statutory time period * * * [as long as] an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered * * * for * * * determining liability."), quoting National R.R. Passenger Corp. v. Morgan, supra at 117. However, the Amended Complaint does not allege any discriminatory event or act which occurred after March 6, 2006, and therefore, the continuing violation theory is inapplicable here. Accordingly, we recommend that the Plaintiff's hostile work environment claim be dismissed.

d.    The Duty of Fair Representation. The Plaintiff contends that the IFO breached its duty of fair representation, as provided in the Master Agreement, when it did not provide representation during the course of his numerous

discrimination complaints.  See, <u>Amended Complaint</u>, supra at ¶¶56-63.  The Plaintiff

maintains that the IFO's failure to provide representation violates PELRA, see,

<u>Minnesota Statutes Sections 179A.01, et seq.</u>, the Uniform Arbitration Act ("UAA"),

see, <u>Minnesota Statutes Sections 572.08 et seq.</u>, and the National Labor Relations Act

("NLRA"), see, <u>Title 29 U.S.C. §§151 et seq.</u>  <u>Id.</u> at ¶63.  The IFO contends, however,

that the Plaintiff's claim must be dismissed because it is time-barred.[10]

       1)     <u>Standard of Review</u>.  To establish that the IFO

breached its duty of fair representation, the Plaintiff must demonstrate that the IFO's

_____

[10]The IFO contends that the NLRA prohibits the Plaintiff from bringing an NLRA claim against it because the Plaintiff's employer -- the University -- is a political subdivision of the State of Minnesota.  See, <u>Amended Complaint</u>, supra at ¶2 (stating that the University "is a tertiary academic institution owned and or [sic] operated by the State of Minnesota.").  We agree.  The NLRA exempts States, their political subdivisions, and State employees, from its application   See, <u>Title 29 U.S.C. §152(2)</u>("The term 'employer' * * * shall not include * * * any State or political subdivision thereof * * *."); <u>§152(3)</u> ("The term 'employee * * * shall not include * * * any individual employed * * * by any other person who is not any employer as herein defined.").  Accordingly, since the University is not an employer under the NLRA, the Plaintiff cannot bring an NLRA claim against the IFO.  See, <u>Roberts v. East Lyme Bd. of Educ.</u>, 173 F.3d 846, 846 (2nd Cir. 1999)(finding that, if a school district is not an employer under the NLRA, then "[i]t necessarily follows that employees of a school district are not 'employees' who can sue their unions under the NLRA for a breach of the duty of fair representation.")[Table decision], citing <u>Strasburger v. Bd. of Educ., Hardin County Community  Unit School District</u>, 143 F.3d 351, 359 (7th Cir. 1998), cert. denied, 525 U.S. 1069 (1999); <u>Johnson v. City of Monroe</u>, 2007 WL 1791211 at *2 (W. D. La., June 18, 2007).

conduct was "'arbitrary, discriminatory, or in bad faith.'"  Hansen v. Qwest Communications, 564 F.3d 919, 923 (8th Cir. 2009), quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967); see also, Cross v. United Auto Workers, Local 1762, 450 F.3d 844, 847 (8th Cir. 2006).  "'A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's action, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'"  Id. at 923-24, quoting Air Line Pilots Ass'n, Int'l. v. O'Neil, 499 U.S. 65, 67 (1991).  Moreover, "'[m]ere negligence, poor judgment, or ineptitude by a union is insufficient to establish a breach of the duty of fair representation.'"  Id. at 924, quoting Buford v. Runyon, 160 F.3d 1199, 1202 (8th Cir. 1998).

Nor does "[a] union * * * act arbitrarily simply because it does not pursue a grievance that it has decided, in good faith, lacks merit."  Cross v. United Auto Workers, Local 1762, supra at 847, quoting Sanders v. Youthcraft Coats & Suits, Inc., 700 F.2d 1226, 1229 (8th Cir. 1983); see also, Baird v. Burlington Northern and Santa Fe R.R. Co., 169 F. Supp.2d 1019, 1025 (D. Minn. 2001), aff'd, 24 Fed.Appx. 629 (8th Cir. 2001).  "A union owes a duty to all members of the bargaining unit, therefore 'the union has the affirmative duty not to press grievances which the union believes, in

good faith, do not warrant such action.'" Id., quoting Sanders v. Youthcraft Coats &

Suits, Inc., supra at 1229.

        2)     Legal Analysis. The IFO asserts that the Plaintiff's

duty of fair representation claim is time-barred, because all of the alleged acts were

committed prior to the ninety (90) day statute of limitations. See, Allen v. Hennepin

County, 680 N.W.2d 560, 563-5 (Minn.App. 2004)(recognizing a ninety (90) day

statute of limitations for claims brought under the PELRA), rev. denied (Minn. August

17, 2004).[11]  We agree.

    "[I]t is well settled that an employee's cause of action accrues on the date the

union engaged in the alleged acts of unfair representation." Skyberg v. United Food

and Commerical Workers Intern., Union, AFL-CIO, 800 F. Supp. 855, 856 (D. S.D.

1992), aff'd, 5 F.3d 297 (8th Cir. 1993), citing Livingstone v. Schnuck Market, Inc.,

---

[11]Although other jurisdictions use the NLRA's six (6) month statute limitations for claims that are similar to the Plaintiff's PELRA claim, the Minnesota Court of Appeals has determined that the ninety (90) day limitation -- the time period for vacating arbitration awards under the UAA -- is consistent with Minnesota's desire to provide stability, and to quickly resolve labor disagreements. See, Allen v. Hennepin County, 680 N.W.2d 560, 565 (Minn.App. 2004)("Minnesota favors prompt settlement of employment disputes * * * and "[l]abor relationships require stability, and the longer the period in which an employee has to bring his claim, the more uncertainty an employer faces in future hiring and staffing decisions."), rev. denied (Minn. August 17, 2004).

950 F.2d 579 (8th Cir. 1991), and <u>Burnett v. Montgomery Ward & Co.</u>, 678 F.Supp. 1423, 1424 (W.D. Mo. 1988).

Here, the Plaintiff has failed to identify a date, or a specific act, when the alleged unfair representation, or the denial of such representation, occurred. Instead, the Plaintiff only asserts that the IFO was supposed to provide counsel "[a]t all material times." <u>Amended Complaint</u>, supra at ¶61. We understand the Plaintiff's argument to contend that the IFO should have provided him with legal representation, throughout all of his discrimination complaints, since 1998. However, we find it significant that the Plaintiff has not offered a single identifiable instance, where the IFO refused to provide legal representation. Rather, the Plaintiff has relied upon the vague "at all material times" language to support his claim. Although the Plaintiff has failed to identify a specific instance, where the IFO denied him representation, we still find that the Plaintiff's claims are time-barred, because the Amended Complaint does not include a discriminatory action, event, or complaint, which could be considered timely.

In addition, the Plaintiff has not identified an act or event that would allow us to make any meaningful determination as to whether the alleged denial of fair representation was arbitrary, discriminatory, or in bad faith. Instead, the Plaintiff

relies on generalities to support his duty of fair representation claim.  See, <u>Amended Complaint</u>, supra at ¶61 ("[The] IFO was supposed to adequately counsel, support, assist, file grievances and or [sic] complaints," and "failed, neglected and refused to enforce [the Plaintiff's] rights under the Collective Bargaining Agreement * * *.").

Although the Plaintiff does not need to provide a detailed factual or legal basis for his claims, he must present a set of facts to establish at least a plausible claim for relief. Here, the Plaintiff has not met his burden, and any conclusion, that the Plaintiff may be entitled to recovery for a breach of the duty of fair representation, would require sheer speculation.  See, <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S.Ct. 1937, 1940 (2009)("While legal conclusion can provide a complaint's framework, they must be supported by factual allegations."); <u>B&B Hardware, Inc. v. Hargis Industries, Inc.</u>, 569 F.3d 383, 388 (8th Cir. 2009)("To survive dismissal, the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'"), quoting <u>Bell Atlantic Corp. v. Twombly</u>, supra at 570; <u>Morrison v. MoneyGram, Intern., Inc.</u>, 607 F. Supp.2d 1033, 1045 (D. Minn. 2009)("Although the factual allegations in the complaint need not be detailed, they must be sufficient to 'raise a right to relief above the speculative level * * * .'"), quoting <u>Bell Atlantic Corp. v. Twombly</u>, supra at 555.

Accordingly, we recommend that the Plaintiff's duty of fair representation claim be dismissed.

Lastly, the Plaintiff contends that the issuance of each discriminatory pay check triggered a new cause of action for the IFO's failure to provide fair representation. See, <u>Amended Complaint</u>, supra at ¶60. In essence, the Plaintiff requests that we apply the provisions of the Fair Pay Act to his duty of fair representation claim. We cannot reach the same conclusion as the Plaintiff. Congress passed the Fair Pay Act to combat pay discrimination. See, <u>Pub.L. No. 111-2 ¶2, 125 Stat. 5 (2009)</u> ("The Ledbetter [v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007)] decision undermines those statutory protections by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices, contrary to the intent of Congress."). Moreover, other Courts have rejected similar attempts to extend the Fair Pay Act beyond pay discrimination claims. See, <u>Rowland v. Certainteed Corporation</u>, supra at *6; <u>Leach v. Baylor College of Medicine</u>, supra at *17; <u>Vuong v. New York Life Ins. Co.</u>, supra at *7-9. Furthermore, the Plaintiff has not presented any legal authority to undermine or challenge our conclusion. Accordingly, we find that the Fair Pay Act does not

preserve the Plaintiff's duty of fair representation claim, and therefore, we recommend its dismissal.

        e.    <u>Intentional Infliction of Emotional Distress</u>. The University Defendants, and the Individual Defendants in their official capacities, argue that the Plaintiff's IIED claim is barred because they are entitled to Eleventh Amendment Immunity.[12] See, <u>University Defendants' Memorandum in Support</u>, supra at 25-26.

---

[12]We find that the University Defendants, and the Individual Defendants in their official capacities, are entitled to Eleventh Amendment immunity from the Plaintiff's IIED claim. The Eleventh Amendment prevents plaintiffs from maintaining Federal jurisdiction over State law claims against non-consenting States, or State officials. See, <u>Grand River Enterprises Six Nations, Ltd. v. Beebe</u>, 467 F.3d 698, 701 (8th Cir. 2006)("The Eleventh Amendment protects states from being sued in federal court without their consent and also bars suits against state officers acting in their official capacities when the state itself is 'the real, substantial party in interest.'"), quoting <u>Ford Motor Co. v. Department of Treasury</u>, 322 U.S. 459, 464 (1945); <u>Cooper v. St. Cloud State University</u>, 226 F.3d 964, 968 (8th Cir. 2000)("The Eleventh Amendment bars federal court jurisdiction over state law claims against unconsenting states or state officials when the state is the real, substantial party in interest, regardless of the remedy sought, including 'pendent state law claims.'"), citing <u>Pennhurst State Sch. & Hosp. v. Halerman</u>, 465 U.S. 89, 120-21 (1984); <u>Rakow v. North Dakota ex rel. State Bd. of Higher Educ.</u>, 2000 WL 227850 at *1 (8th Cir., February 24, 2000)( "The plaintiff's clams were "barred by the Eleventh Amendment, which prohibits federal courts from hearing suits against states and state officers in their official capacities when, as in this case, the suit alleges a violation of state law and regardless of whether money damages or injunctive relief is sought.")[Table Decision]; see also, <u>Bisciglia v. Lee</u>, 370 F. Supp.2d 874, 878 (D. Minn. 2005)(recognizing that, when a State employee is sued in his official capacity, the State is the real party in interest and, as a result, the Eleventh Amendment is implicated.). Accordingly, we recommend that

(continued...)

For its part, the IFO asserts that the Plaintiff's IIED claim is time-barred.[13]  See, <u>IFO's Memorandum in Support</u>, supra at 21-24.   In addition, all of the Defendants contend that their alleged conduct does not meet the high threshold that is required for an IIED claim and, as a result, the Plaintiff has failed to state a claim upon which relief can be granted.  See, <u>University Defendants' Memorandum in Support</u>, supra at 25-27; <u>IFO's Memorandum in Support</u>, supra at 21-24; <u>University Defendants' Reply Memorandum</u>, supra at 12.

At the end of the Hearing, we granted the parties leave to file additional briefing on the Plaintiff's IIED claim.  In his briefing, the Plaintiff argues that he did not need

_____

(...continued)
the Plaintiff's IIED claims against the University Defendants, and the Individual Defendants in their official capacities, be dismissed.

[13]The IFO contends that the Plaintiff's IIED claims are time-barred for any conduct that occurred prior to August 16, 2006.  See, <u>IFO's Memorandum in Support</u>, supra at 24; see, <u>Docket No. 1</u>, (Original Complaint filed on August 18, 2008).  We agree. In Minnesota, claims for the IIED  are subject to a two (2) year statute of limitations. See, <u>Wenigar v. Johnson</u>, 712 N.W.2d 190, 209 (Minn.App. 2006)(noting that there is a two (2) year statute of limitations for filing an IIED claim), citing <u>Wallin v. Minnesota Dept. of Corrections</u>, 598 N.W.2d 393, 400 (Minn. App. 1999), rev. denied (Minn. October 21, 1999); see also, <u>Minnesota Statutes Section 541.07(1)</u>.  Here, the Amended Complaint does not identify, beyond mere generalities, any of the IFO's conduct after August 16, 2006, that caused the Plaintiff to suffer extreme emotional distress.  Absent any such allegations, we find that the Plaintiff's claims are time-barred, and therefore, we recommend their dismissal.

to establish the elements for an IIED claim, so long as he established that the Defendant's violated one of his statutory claims.  See, <u>Plaintiff's Additional Briefing</u>, <u>Docket No. 74</u>, at 1-2.  The IFO argues that the Plaintiff's statutory claims may allow him to recover for emotional distress damages, but he may not "simply [skip] the elements * * * of IIED and [then] recover for IIED."  See, <u>IFO's Additional Briefing</u>, <u>Docket No. 76</u>, at 1.  Given these statements of position, we turn to consider whether a statutory violation, standing alone, permits the Plaintiff to circumvent the high threshold requirement for an IIED claim.

1)      <u>IIED and Statutory Violations</u>.  In support of his argument, the Plaintiff primarily relies upon the Minnesota Court of Appeals' decision in <u>Kamrath v. Suburban Nat'l Bank</u>, 363 N.W.2d 108 (Minn.App. 1985).  In <u>Kamrath</u>, the plaintiff requested emotional distress damages, arising from his employer's violation of the Minnesota Polygraph Statute.  <u>Id.</u> at 111; see also, <u>Minnesota Statutes</u> <u>Section 181.75, Subdivision 1</u> ("No employer or agent thereof shall directly or indirectly solicit or require a polygraph, voice stress analysis, or any test purporting to test the honesty of any employee or prospective employee.").[14]  The Court denied

---

[14]Minnesota Statutes Section 181.75, Subdivision 4, provides that "any person injured by a violation of this section may bring a civil action to recover any and all
(continued...)

the defendant's request to impose the high requirements of an IIED claim, recognizing that those requirements "[apply] only to those cases where there is no independent underlying tort or cause of action." Id.

Although the Plaintiff contends that Kamrath allows him to recover for an IIED claiming without meeting its high threshold standard, we flatly disagree. Presumably, if the Plaintiff establishes a violation of his remaining statutory claims, and those statutes allow a recovery for emotional distress damages, the Plaintiff may be able to recover damages for emotional distress, based upon those statutory violations. However, unlike the plaintiff in Kamrath, the Plaintiff has not solely relied upon his statutory claims, as he has also asserted a separate claim for the IIED. Moreover, Minnesota Courts have long recognized that a claim for the IIED is an "independent tort," which is not dependent upon other claims to survive. See, Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., 556 N.W.2d 557, 560 (Minn. 1996), citing Hubbard v. United Press International, Inc., 330 N.W.2d 428, 438 (Minn. 1983).

More importantly, we find it inconceivable that the Minnesota Supreme Court would have insisted upon such a high threshold for the assertion of an IIED claim, and

---

(...continued)
damages recoverable at law * * * ."

then permit plaintiffs to facilely circumvent that threshold by simply asserting a statutory violation. If the Plaintiff wishes to recover on his IIED claim, he must satisfy that independent tort's high threshold showing, and therefore, we turn to address whether the Plaintiff's IIED claim can withstand the Defendants' Motions to Dismiss.

2) <u>IIED as a Separate and Independent Tort</u>.

a) <u>Standard of Review</u>. A claim for IIED requires extreme and outrageous conduct on the part of the defendant, that was intentional or reckless, and that gives rise to severe emotional distress. See, <u>Hubbard v. United Press International, Inc.</u>, supra at 439-40; see also, <u>Langeslag v. KYMN Inc.</u>, 664 N.W.2d 860, 864 (Minn. 2003). The Minnesota Supreme Court has clarified that a claim for IIED is "sharply limited to cases involving particularly egregious facts," and the resultant distress must be severe. <u>Id.</u> at 438-39; see also, <u>Wenigar v. Johnson</u>, 712 N.W.2d 190, 207-08 (Minn.App. 2006); <u>Oswalt v. Ramsey County</u>, 371 N.W.2d 241, 248 (Minn.App. 1985), rev. denied (Minn., September 26, 1985).

To sustain a claim of IIED, the alleged behavior must be so extreme as to be "utterly intolerable to a civilized community," <u>Hubbard v. United Press International, Inc.</u>, supra at 438-39, or "so severe that no reasonable person can be expected to

- 43 -

endure it." Strauss v. Thorne, 490 N.W.2d 908, 913 (Minn.App. 1992), citing Hubbard v. United Press International, Inc., supra at 439; see also, Thomsen v. Ross, 368 F. Supp.2d 961, 977 (D. Minn. 2005). "Liability for [IIED] does not extend to 'insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" Langeslag v. KYMN Inc., supra at 865, quoting Restatement (Second) of Torts Section 46, Comment d; Strauss v. Thorne, supra at 913 ("General embarrassment, nervousness and depression are not in themselves a sufficient basis for a claim of intentional infliction of emotional distress.").

b)      Legal Analysis. The Plaintiff contends that the Defendants created a system of discrimination, harassment, and abuse, which subjected the Plaintiff to "extreme emotional distress, which no reasonable person would be expected to bear." Amended Complaint, supra at ¶65. We are not so persuaded.

With respect to the University Defendants, and the Individual Defendants, the Plaintiff's allegations have portrayed an unfriendly and contentious work place. However, a work environment in which co-workers or supervisors criticize, taunt, or harass another employee, does not present the egregious conduct required for an IIED claim. See, e.g., Schibursky v. International Business Machines Corp., 820 F. Supp.

1169, 1183 (D. Minn. 1993)(finding that verbal harassment by the plaintiff's supervisor fell short of egregious conduct required); <u>Langeslag v. KYMN, Inc.</u>, supra at 866(filing false police reports did not rise to outrageous conduct); <u>Lund v. Chicago and Northwestern Transp. Co.</u>, 467 N.W.2d 366, 369-70 (Minn.App. 1991)(finding that the employer's conduct did not establish an IIED claim where the plaintiff experienced verbal harassment, adulteration of his coffee, and the posting of a derogatory memorandum); <u>Eklund v. Vincent Brass and Aluminum Co.</u>, 351 N.W.2d 371, 379 (Minn.App. 1984)(concluding that the plaintiff's depression, embarrassment, and humiliation insufficient to support an IIED claim), rev. denied (Minn., November 1, 1984).

In addition, negative comments concerning the Plaintiff's work performance, or the delay of a promotion, are not sufficient to establish IIED. See, <u>Hubbard v. United Press Intern., Inc.</u>, supra at 440 (finding that discipline and verbal and written criticism directed at the plaintiff did not rise to the level of outrageous conduct); <u>Lee v. Metropolitan Airport Com'n</u>, 428 N.W.2d 815, 823 (Minn.App. 1988)(delay in promotion did not reach level of outrageous conduct). Therefore, the acts that are alleged by the Plaintiff plainly do not satisfy the high threshold showing for an IIED

claim, and accordingly, we recommend that the Plaintiff's claim against the University

Defendants, and the Individual Defendants, be dismissed.

With respect to the IFO, the Plaintiff has failed to identify the IFO's conduct

which he asserts to be outrageous. Absent such factual allegations, we cannot

conclude that the IFO subjected the Plaintiff to extreme emotional distress. Therefore,

since the Plaintiff has failed to allege a set of facts that establishes a plausible claim

of IIED against the IFO, we recommend that the Plaintiff's IIED claim against the IFO

be dismissed. See, B&B Hardware, Inc. v. Hargis Industries, Inc., supra at 388;

Young v. City of St. Charles, supra at 627; Springdale Educ. Ass'n v. Springdale Sch.

Dist., supra at 651.

f.    The Plaintiff's Motion for Default Judgment.[15]   On January

5, 2009, the Plaintiff filed a Motion for Default Judgment, in which he contended that

the Defendants had failed to file responsive pleadings to his Complaint. See, Docket

No. 26.  We find the Plaintiff's Motion to be entirely without merit.

According to Rule 55(a), Federal Rules of Civil Procedure, "[w]hen a party

against whom a judgment for affirmative relief is sought has failed to plead or

---

[15]At the Hearing, the Plaintiff stated that he would withdraw his Motion for Default Judgment.  See, Docket No. 26.  However, as of this date, the Plaintiff has not withdrawn that Motion, and therefore, we are now caused to address it.

otherwise defend as provided by these rules, and the fact is made to appear by affidavit or otherwise, the clerk must enter the party's default." A Judgment of Default may, thereafter, be entered on application to the Court. See, <u>Rule 55(b)</u>, <u>Federal Rules of Civil Procedure</u>; <u>Johnson v. Dayton Electric Manufacturing Co.</u>, 140 F.3d 781, 783 (8th Cir. 1998)("When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede [the] grant of a default judgment under Rule 55(b)."); <u>United States v. Woods</u>, 2004 WL 790332 at *3 (D. Minn., March 31, 2004)("Rule 55(b)(2) commits the entry of a default judgment to the discretion of the district court."), citing <u>FTC v. Packers Brand Meats, Inc.</u>, 562 F.2d 9, 10 (8th Cir. 1977); see also, <u>Harris v. St. Louis Police Dep't</u>, 164 F.3d 1085, 1086 (8th Cir. 1998).

When determining whether a Default Judgment is appropriate, the Court must consider whether the assertedly defaulting party has filed a responsive Answer, or other pleading, prior to an entry of a Default Judgment. See, <u>Johnson v. Allied Interstate Inc.</u>, 2002 WL 1906024 at *2 (D. Minn., August 19, 2002)("Although the entry of a default against Allied would have been warranted as of the date Johnson brought her motion for default judgment, no default was entered on the docket

pursuant to Rule 55(a), and the Court cannot ignore the fact that an Answer has now been filed and Allied is prepared to defend the lawsuit on the merits.").

Here, the Plaintiff contends that the University Defendants, and the Individual Defendants, failed to file an Answer, or otherwise respond to his Complaint, within twenty (20) days of service, as required by Rule 12(a)(1)(A), Federal Rules of Civil Procedure ("[A] defendant shall serve an answer * * * within 20 days after being served with the summons and complaint."). With respect to the IFO, the Plaintiff contends that the IFO failed to file an Answer, or otherwise respond to his Complaint, within sixty (60) days after the request for a waiver of service was sent. See, <u>Rule 12(a)(1)(A)(ii), Federal Rules of Civil Procedure</u> ("[A] defendant shall serve an answer * * * if it has timely waived service * * * within 60 days after the request for waiver was sent * * *.")

On November 3, 2008, the University Defendants, and the Individual Defendants in their official capacities, returned an acknowledgment of service form, and accordingly, they were required to file, and serve, a responsive pleading by no later than November 23, 2008. See, <u>Plaintiff's Affidavit in Support -- Motion for Default Judgment</u>, <u>Docket No. 30</u>, Exhibit 4. On October 24, 2008, the Plaintiff sent the IFO a request for waiver of service, and thereafter, on November 19, 2008, the

IFO filed an executed waiver of service.  See, <u>Docket No. 17</u>.  Accordingly, the IFO had until December 23, 2008, by which to file, and serve, a responsive pleading. In lieu of an Answer, and as permitted by Rule 12(b), Federal Rules of Civil Procedure, the University Defendants, and the Individual Defendants, filed a  Motion to Dismiss on November 20, 2008 -- that is, three (3) days before any response was required under the Rules.  See, <u>Docket No. 18</u>.

On November 25, 2008, the IFO filed a Motion to Dismiss, almost thirty (30) days before any response was required under the Rules.  See, <u>Docket No. 20</u>.  Since the Defendants have demonstrated their intention to defend against the Plaintiff's claims, and because their Dispositive Motions were timely filed, we recommend that the Plaintiff's Motion for Default Judgment be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1.	That the University Defendants, and the Individual Defendants' Amended Motion for Partial Dismissal [Docket Nos. 18 and 43], be granted, such that all of the Plaintiff's claims against those Defendants, with the exception of his pay discrimination claim, be dismissed.

2.	That the IFO's Motion to Dismiss [Docket No. 20] be granted.

3.      That the Plaintiff's Motion for Default Judgment [Docket No. 26] be denied.


Dated:  August 27, 2009                          *s/Raymond L. Erickson*
                                                 Raymond L. Erickson
                                                 CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 14, 2009,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 14, 2009,** unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.